*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ESMERALDA AGUIAR, | |
| Plaintiff, | Civil Action No. 20-18551 (FLW) |
| v. | OPINION |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security[1], | |
| Defendant. | |

WOLFSON, Chief Judge:

Esmeralda Aguiar ("Plaintiff") appeals from the final decision of the Acting Commissioner of Social Security, Kilolo Kijakazi ("Defendant"), denying Plaintiff disability benefits under Title II of the Social Security Act (the "Act"). After reviewing the Administrative Record, the Court finds that the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and, accordingly, the ALJ's decision is **AFFIRMED**.

I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was born on August 27, 1977, and she was 38 years old[2] at the alleged disability onset date of July 29, 2015. (Administrative Record ("A.R.") 15, 22.) Plaintiff completed high

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

[2] Plaintiff is considered to be a "younger person" because she was under the age of 50 years old when she applied for disability benefits. *See* 20 CFR 404.1563(c).

school and worked as an administrative assistant, as well as a receptionist, prior to her alleged disability. (A.R. 22.) Plaintiff alleges the following impairments: psoriatic arthritis, osteoarthritis, fibromyalgia, cervical and lumbar herniated disks, cervical bulging disk, depression, anxiety disorder, Graves' disease, chronic migraines, and chronic insomnia. (A.R. 214.) Plaintiff filed an application for disability benefits on August 15, 2017. (A.R. 15.) Plaintiff's application was denied initially on October 26, 2017, and upon reconsideration on April 10, 2018. (*Id*.) Following these denials, Plaintiff filed a request for a disability benefits hearing. (*Id*.) On September 17, 2019, Plaintiff appeared and testified before Administrative Law Judge Nancy Lisewksi ("ALJ"). (A.R. 33.) After this hearing, the ALJ issued her decision, finding Plaintiff not disabled under the Act. (A.R. 24.) Plaintiff appealed the ALJ's decision to the Appeals Counsel on December 31, 2019. (A.R. 4.) On October 5, 2020, the Appeals Counsel denied Plaintiff's request for review. (A.R. 1.) Thereafter, Plaintiff filed the instant appeal on December 9, 2020. (ECF No. 1.)

### A.    Review of the Medical Evidence

#### i.    *Physical Impairments*

The record establishes that prior to the alleged onset date of July 29, 2015, an endocrinologist treated Plaintiff's diabetes, hyperlipidemia, and hypertension. (A.R. 323.) In August 2015, Plaintiff began seeing rheumatologist, Dr. Pavlinka Dundeva-Baleva, M.D. (A.R. 392.) Dr. Dundeva-Baleva treated Plaintiff's psoriatic arthritis, lower back pain, and fibromyalgia. (A.R. 392-473, 568-71, 705-86.) In July 2016, Plaintiff started physical therapy for right lower back pain. (A.R. 672.) Plaintiff reported that while she experienced a gradual onset of pain, she also felt a "sudden jerk in her lower back while carrying laundry upstairs." (*Id*.) Plaintiff stopped physical therapy on October 4, 2016. (A.R. 669.) Upon discharge, Plaintiff reported that she "feels better after therapy in her low back," and received home exercise program instructions. (*Id*.)

On August 25, 2016, Plaintiff visited orthopedist, Dr. Gautam H. Kothari, D.O.  Plaintiff complained of neck, low back, and right lower leg pain.  (A.R. 364.)  On examination, Plaintiff demonstrated that she was in no acute distress, had normal mood and affect, a non-antalgic gait and independent ambulation.  (A.R. 365.)  Plaintiff's cervical spine revealed no gross deformity, and although a Spurling maneuver was positive on the right side, Plaintiff exhibited no tender points or trigger points.  (*Id*.)  Inspection of Plaintiff's shoulders revealed full range of motion bilaterally and no tenderness.  (*Id*.)  A lumbar spine examination was normal except for a positive slump test and straight leg raise test at 45 degrees on the right side.  (A.R. 366.)  Plaintiff's lower extremity strength was grossly intact and Plaintiff could heel toe walk without difficulty.  (*Id*.)  Dr. Kothari assessed Plaintiff with cervical and lumbar strain and disc disease, and recommended an MRI for further evaluation.  (*Id*.)

On June 2, 2017, Plaintiff visited primary care provider, Laisa Vadakara, M.D.  (A.R. 593.)  On physical examination of Plaintiff's extremities, Dr. Vadakara noted no signs of cardiovascular disease and normal pulses.  (A.R. 594.)  Plaintiff also sought treatment from neurologist, Lei Zhang, M.D., complaining of migraines and neck pain.  (A.R. 573.)  Dr. Zhang recommended an EMG study of Plaintiff's bilateral upper extremity and directed Plaintiff to use an ice pack and neck support pillow.  (A.R. 574.)  Plaintiff was also prescribed extended release Topiramate for her migraines.  (*Id*.)  Later that month, on June 26, 2017, an MRI of Plaintiff's lumbar spine revealed disc herniation and annular fissure, impingement of the thecal sac, and facet effusions, as well as left paracentral disc extrusion with superior migration.  (A.R. 382.)  Plaintiff also underwent an MRI of the cervical spine on July 5, 2017, which showed a bulging disk and focal midline disc herniation.  (A.R. 381.)

On July 11, 2017, Plaintiff returned to Dr. Zhang to follow-up regarding her migraines. (A.R. 474.)  Plaintiff reported that her migraines improved after taking Topiramate and that she tolerated the medication well but continues to suffer neck pain, bilateral arm numbness, tingling sensation, and low back pain radiating down her right leg.  (A.R. 474.)  Dr. Zhang performed an upper extremity EMG and recommended further physical therapy.  (*Id*.)  The EMG revealed evidence of a mild bilateral cervical polyradiculopathies and mild neurogenic changes in the muscles.  (A.R. 477.)

In September 2017, Plaintiff followed-up with her orthopedist to review her MRIs. Plaintiff reported worsened back and leg pain despite physical therapy and medication.  (A.R. 606.)  On examination, Plaintiff had a non-antalgic gait and could ambulate independently.  Dr. Kothari observed slightly limited cervical range of motion, but no tender points or trigger points and a negative Spurling maneuver.  (A.R. 607.)  Plaintiff had full range of motion in her shoulders and normal upper extremity strength in all major muscle groups without focal deficits.  (*Id*.)  Dr. Kothari noted no intrinsic hand weakness or focal atrophy.  (*Id*.)  Inspection of the lumbar spine revealed no gross deformity, tender points, or trigger points.  (*Id*.)  Slump and facet loading tests were negative, but Plaintiff exhibited positive straight leg raising on the right side.  (*Id*.)  Plaintiff's lower extremity strength was 4/5 in the right hip, but 5/5 in the left lower leg.  (*Id*.)  Dr. Kothari refilled Plaintiff's medications and recommended lumbar steroid injections.  (A.R. 608.)

On October 17, 2017, Plaintiff returned to her orthopedist after having received an epidural steroid injection.  (A.R. 603.)  Plaintiff reported 50 percent improvement from the injection but continued axial neck pain and upper extremity discomfort.  (*Id*.)  Dr. Kothari noted that Plaintiff was "pleased with her progress following recent lumbar intralaminar epidural" and recommended thoracic trigger point injections for Plaintiff's thoracic myofascial strain.  (A.R. 605.)  Plaintiff

received an epidural steroid injection on April 30, 2018, and returned to physical therapy in May 2018.  (A.R. 667, 670.)  Plaintiff reported greater neck pain and mid back pain than lower back pain, as injections had improved her lower back pain. (*Id.*)

### ii.    *Mental Impairments*

Plaintiff also sought mental health treatment.  On July 27, 2017, Plaintiff began treatment with Catholic Charities. (A.R. 543.)  Plaintiff reported anxiety and depression, as well as difficulty sleeping due to pain.  (*Id.*)  Plaintiff also noted that her family was a good support system.  (*Id.*)  On examination, Dr. Razia Q. Matin, M.D., observed that Plaintiff was calm and cooperative and dressed and groomed appropriately.  (A.R. 547.)  Plaintiff's thought process was goal oriented, her memory was intact, and she displayed fair insight and judgment.  (*Id.*)

In September 2017, Plaintiff underwent a mental status examination in connection with her application for disability benefits with Dr. AnnaMarie Resnikoff, Ph.D. (A.R. 538-40.)  Plaintiff reported that she can attend to her daily living needs, but loses her breath easily.  (A.R. 538.)  At home, Plaintiff cleans, watches TV, and helps her kids with their homework.  (A.R. 539.)  She reported that she maintains limited interpersonal relationships and is depressed due to chronic pain and difficulty returning to full-time employment.  (A.R. 540.)  On examination, Dr. Resinkoff described Plaintiff as pleasant, cooperative, and displaying no difficulty walking in and out of the room or remaining seated for the examination.  (A.R. 539.)  However, Plaintiff's mood during examination was noted to be depressed with congruent affect.  (A.R. 540.)  Plaintiff could perform calculations and serial fives but was unable to perform serial sevens.  (A.R. 539.)  Plaintiff's memory and recall were largely intact and she was alert and oriented times three.  (A.R. 540).  Poor concentration and attention skills were noted at times.  (*Id.*)  Dr. Resinkoff diagnosed

depressive disorder NOS and found that Plaintiff would be able to handle funds if awarded benefits. (*Id*.)

At a follow-up appointment with Catholic Charities in October 2017, Dr. Sailakshmi Ramanujam, M.D., found Plaintiff's mental status to be normal, except for her mood and affect. (A.R. 558.) Plaintiff reported trouble sleeping, mood swings and crying in front of her children. (*Id*.) However, Plaintiff stated that her depression "evened out" with Abilify. (*Id*).

### B.      Review of Testimonial Record

#### i.      Plaintiff's Testimony

At the September 17, 2019 hearing before ALJ Nancy Lisewski, Plaintiff testified that she stopped working in 2015 due to ongoing medical issues. (A.R. 36.) Plaintiff stated that she wakes up with bad anxiety and stiffness and spends one to two hours stretching in the mornings. (*Id*.) If she does not stretch, she experiences pain walking, and hammering and stabbing in her knees and ankles. (A.R. 36-37.) Plaintiff testified that she only experiences relief when lying down, but even in that position, different body parts go numb, and the pain prevents her from remaining asleep at night. (A.R. 37.) To move and support herself throughout the day, Plaintiff stated that she uses a cane, back and wrist braces, and orthotics. (*Id*.) Plaintiff further testified that although the cane helps her with balance, she can only walk for five minutes with the cane. (A.R. 38.) However, Plaintiff also testified that she can only sit for 20 minutes at a time. (A.R. 44.) Even with her wrist brace, Plaintiff stated that she has difficulty typing, opening things, and drawing. (A.R. 39-40.) Plaintiff reported that she also suffers from migraines every other day, if not every day, that last for an hour to two hours on average. (A.R. 45.)

With respect to daily activities, Plaintiff testified that her husband handles the "day-to-day stuff—the laundry, the cooking, errands," and her daughters help him. (A.R. 41, 44.) However,

Plaintiff stated that she is capable of grocery shopping during short trips to the store.  (A.R. 45.)  With respect to concentration, Plaintiff testified that she cannot focus or retain information from conversations.  (A.R. 46-47.)  Plaintiff stated that although she does not have problems getting along with friends and family, she has developed distance with people, because it is difficult for her to socialize while sick.  (A.R. 47.)

*ii.*     *Vocational Expert's Testimony*

Vocational Expert, Christine DiTrinco (the "VE") began her testimony by classifying Plaintiff's past employment as a project administrative assistant for a construction company and receptionist, according to the Dictionary of Occupational Titles ("DOT").  (A.R. 50-51.)  The VE classified the project admin job as "administrative assistant," (DOT code 169.167-010), a skilled position with an SVP level of 7 and sedentary level of exertion, but noted that Plaintiff performed the position at upwards of medium exertion.  (A.R. 49-50.)  The receptionist work best matched "front office worker," (DOT code 237.367-038) a semi-skilled, sedentary position with a SVP skill level of 4, but the VE specified that Plaintiff occasionally performed the job at upwards of light exertion.  (A.R. 50.)

The ALJ proceeded to ask the VE two hypothetical questions.  First, the ALJ asked the VE whether any of Plaintiff's past work would be available if she assumes an individual of Plaintiff's "age, education, and work experience," limited to routine, simple, light work, with all posturals occasional.  (A.R. 50.)  The VE confirmed that no past work would be available but provided three alternatives in the national economy: "office helper," "information clerk," and "cashier, parking lot, garage."  (A.R. 50-51.)  All three positions are unskilled with an SVP of 2 and require light exertion.  (*Id.*)  Under the second hypothetical, the ALJ asked whether, assuming the same conditions, any work would be available if the individual were off-task at least 20 percent of the

time.  (A.R. 51.)  The VE opined that 20 percent off-task is excessive and work-preclusive.  (*Id*.)

Plaintiff's counsel also questioned the VE.  (A.R. 51-53.)  Specifically, counsel asked what, if any,

impact Plaintiff's cane use would have on Plaintiff's ability to perform the jobs cited.  (A.R. 51.)

The VE stated that Plaintiff's cane use would not have any impact on job performance as the

positions are primarily performed seated.  (*Id*.)  Counsel then asked if the hypothetical individual

would be able to perform the jobs if unable to use her right dominant hand to lift.  (A.R. 52.)  The

VE similarly opined that due to the primarily sedentary nature of the jobs cited, such an individual

could nonetheless perform the jobs.  (*Id*.)  Finally, Plaintiff's counsel inquired whether the

hypothetical individual could perform the cited jobs if further limited to only occasional bilateral

fingering and handling.  (*Id*.)  Under the additional limitation, the VE stated that she would rule

out such jobs. (*Id*.)

### iii.      Third-Party Statements

Plaintiff's mother, Maria Sanchez, and sister, Janet Valentin-Forte, submitted statements

in support of Plaintiff's application.  (A.R. 268, 270.)  Ms. Sanchez's statement details the impact

Plaintiff's condition has had on her relationship with her daughter.  (A.R. 270.)  When Plaintiff

was healthy, Ms. Sanchez described her as her "very active" and her "go-to person when lifting or

moving heavy objects."  (*Id*.)  Ms. Sanchez noted that her daughter now tires very easily and

complains of aches and pains during conversations over the phone.  (*Id*.)  Similarly, Ms. Valentin-

Forte noted Plaintiff's worsening health over time.  (A.R. 268.)  Ms. Valentin-Forte stated that

while Plaintiff used to go out dancing, she now cannot go anywhere for "long periods of time,

unless it is somewhere she can sit for the duration of her visit" and "never leaves the house without

at least her cane."  (*Id*.)  Additionally, Ms. Valentin-Forte indicated that Plaintiff's prescribed

medications impair her ability to drive.  (*Id*.)  Ms. Valentin-Forte reported that Plaintiff's physical

inability to do household chores has taken an emotional toll on her, flaring her anxiety, but also noted Plaintiff's "great family support system."  (*Id*.)

### C.      The ALJ's Findings

On October 31, 2019, the ALJ issued a written decision examining whether Plaintiff satisfied her burden of demonstrating disability under the Commissioner's five-step sequential evaluation process.  (A.R. 15-24.)  As an initial matter, the ALJ noted that Plaintiff met the insured status requirements of the Act through March 31, 2018.  (A.R. 17.)

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of July 29, 2015, through her last insured date of March 31, 2018.  (*Id*.)  At step two, the ALJ found that Plaintiff had the following severe impairments: "anxiety, depression, graves' disease, obesity, cervical degenerative disc disease with herniation, lumbar degenerative disc disease with right lower extremity radiculopathy, psoriatic arthritis, [and] cervical radiculopathy."  (*Id*.)

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 through the last insured date.  (*Id*.)  Specifically, the ALJ concluded that Plaintiff's degenerative disc disease did not meet Listing 1.04, because there is no evidence in the record of "nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication."  (A.R. 17-18.)  The ALJ also found that Listing 14.09, Inflammatory Arthritis, was unmet, as Plaintiff can "ambulate effectively and perform fine and gross movements with her upper extremities." (A.R. 18.)  Moreover, the ALJ observed that Plaintiff does not have at least two of the constitutional symptoms or signs of inflammatory arthritis.  (*Id*.)  Turning to Plaintiff's mental health, the ALJ determined that Plaintiff's impairments, considered singly and

in combination, did not meet the criteria of listings 12.04 and 12.06. (*Id.*) In making this finding, the ALJ considered the "paragraph B" criteria, which are satisfied when the mental impairments result in at least one extreme or two marked limitations in the following broad areas of functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. In understanding, remembering, or applying information, the ALJ found that Plaintiff has mild limitations. In that regard, while the ALJ acknowledged that Plaintiff had difficulty completing tasks, the ALJ relied on Plaintiff's statements that she could "perform simple maintenance, go to doctor's appointments, take medications, shop, and read," in addition to record evidence that Plaintiff could provide information about her health, describe her prior work history, follow healthcare instructions, comply with treatment, and respond to questions from medical providers. (*Id.*) In interacting with others, Plaintiff also had mild limitations. (*Id.*) In so finding, the ALJ cited Plaintiff's reported difficulty engaging in social activities and her statements that she can shop, spend time with friends and family, and live with others, as well as evidence describing Plaintiff as pleasant and cooperative. (*Id.*) The ALJ next evaluated Plaintiff's ability to concentrate, persist, or maintain pace. In this functional area, the ALJ found that Plaintiff had moderate limitations, citing Plaintiff's statements that she has difficulty concentrating, focusing generally, and completing tasks on the one hand, and her statements that she can watch TV, manage funds, and handle her own medical care on the other hand. (*Id.*) Last, the ALJ found mild limitations in the area of adaptation and self-management. (*Id.*) The ALJ noted Plaintiff's assertions of difficulty managing her mood, but also credited Plaintiff's statements that she can handle self-care and personal hygiene, care for children, and get along with caregivers, in addition to objective evidence in the record to the same effect. (A.R. 18-19.) Because the ALJ did not find at least two marked

limitations or one extreme limitation, the ALJ concluded that the "paragraph B" criteria were not met.  (A.R. 19.)

At step four, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to "perform light work . . . except she is limited to occasional postural maneuvers, and simple, routine tasks."  (*Id*.)  The ALJ explained that Plaintiff is limited to light level work with occasional postural maneuvers "to accommodate her neck and back conditions, as well as her arthritis."  (A.R. 22.)  Additionally, the ALJ indicated that Plaintiff's anxiety and depression were accounted for by the limitation for simple, routine tasks.  (*Id*.)  Given Plaintiff's RFC, the ALJ found that she could not perform her past relevant work as an administrative assistant.  (*Id*.)

However, at step five, the ALJ relied on the testimony of the VE to find that Plaintiff could perform other simple, light work that existed in significant numbers in the national economy through the last insured date.  (A.R. 23.)  In sum, the ALJ held that Plaintiff was not under a disability, as defined in the Act, from July 29, 2015 through March 31, 2018.  (A.R. 24.)

## II.    <u>STANDARD OF REVIEW</u>

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001).  The Commissioner's decisions regarding questions of fact are deemed conclusive on a reviewing court if supported by "substantial evidence in the record."  42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  While the court must examine the record in its entirety for purposes of determining whether the Commissioner's findings are supported by substantial evidence, *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978), the

standard is highly deferential.  *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).  Indeed, "substantial evidence" is defined as "more than a mere scintilla," but less than a preponderance. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004).  "It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999).  A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992), *cert. denied*, 507 U.S. 924, 113 S. Ct. 1294, 122 L. Ed. 2d 685 (1993).  Accordingly, even if there is contrary evidence in the record that would justify the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the evidence.  *See Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).

Disability insurance benefits may not be paid under the Act unless Plaintiff first meets the statutory insured status requirements.  *See* 42 U.S.C. § 423(c).  Plaintiff must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...."  42 U.S.C. § 423(d)(1)(A); *see Plummer*, 186 F.3d at 427.  An individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Act establishes a five-step sequential process for evaluation by the ALJ to determine whether an individual is disabled.  *See* 20 C.F.R. § 404.1520.  First, the ALJ determines whether the claimant has shown that he or she is not currently engaged in "substantial gainful activity." *Id*. at § 404.1520(a); *see Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987).  If a claimant is presently

engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits.  *See* 20 C.F.R. § 404.1520(b); *see also Bowen*, 482 U.S. at 140.  Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(c); *see Bowen*, 482 U.S. at 146-47 n.5.  Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 404.1521(b).  These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling."  *Id*.  A claimant who does not have a severe impairment is not considered disabled.  *Id*. at § 404.1520(c); *see Plummer*, 186 F.3d at 428.

Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List").  20 C.F.R. § 404.1520(a)(4)(iii).  If the claimant demonstrates that his or her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits.  *See id*. at § 404.1520(d); *see also Bowen*, 482 U.S. at 146-47 n.5.  If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent.  *See* 20 C.F.R. § 404.1526(a).  If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment.  *Id*.  An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar.  *Williams*, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains

the RFC to perform his or her past relevant work.  20 C.F.R. § 404.1520(e); *Bowen*, 482 U.S. at 141.  If the claimant can perform past relevant work, the claimant is determined to not be disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e); *Bowen*, 482 U.S. at 141-42.  The claimant bears the burden of demonstrating an inability to return to the past relevant work.  *Plummer*, 186 F.3d at 428. Finally, if it is determined that the claimant is no longer able to perform his or her past relevant work, the burden of production then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy." *Bowen*, 482 U.S. at 146-47 n.5; *Plummer*, 186 F.3d at 428.  This step requires the ALJ to consider the claimant's residual functional capacity, age, education, and past work experience.  20 C.F.R. § 404.1520(f).  The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant is capable of performing work and not disabled.  *Id*.

## III.   PLAINTIFF'S CLAIMS ON APPEAL

Plaintiff advances three arguments on appeal.  First, Plaintiff contends that the ALJ failed to incorporate limitations consistent with Plaintiff's impairments into the RFC.  (*See* Plaintiff's Moving Brief ("Pl. Br.") at 13-18.)  Second, Plaintiff argues that the ALJ failed to evaluate Plaintiff's migraine headaches as a medical impairment.  (Pl. Br. 18-20.)  Third, Plaintiff claims that the ALJ failed to properly consider the third-party statements of Ms. Maria Sanchez and Ms. Janet Valentin-Forte.  (A.R. 21-22.)  The Court addresses each argument, in turn.

### A.   Incorporation of Limitations into Plaintiff's RFC

Plaintiff argues that the ALJ failed to incorporate limitations consistent with Plaintiff's depression, anxiety, Grave's disease, obesity, cervical degenerative disc disease with herniation, lumbar degenerative disc disease with right lower radiculopathy, psoriatic arthritis and cervical radiculopathy into Plaintiff's RFC, despite recognizing them as severe impairments.  (Pl. Br. 14.)

14

As discussed above, the ALJ found that Plaintiff could perform light work with the limitations of occasional postural maneuvers and simple, routine tasks.  (A.R. 19.)  In her decision, the ALJ explained that limitations for light work with occasional postural maneuvers "accommodate [Plaintiff's] neck and back conditions, as well as her arthritis" while the limitation for simple, routine tasks accounts for Plaintiff's "anxiety and depression."  (A.R. 22.)

Plaintiff first contends that the ALJ should have incorporated reaching, handling, fingering or feeling limitations in connection with Plaintiff's cervical degenerative disc and cervical radiculopathy impairment, in addition to walking and push/pull limitations to accommodate Plaintiff's lumbar degenerative disc disease with right lower extremity neuropathy.  (Pl. Br. 16.)  In support of those limitations, Plaintiff recounts her testimony on hand strength and dexterity issues, as well as her difficulty sitting, standing, and walking.  (*Id*.)  However, the ALJ found that Plaintiff's testimony in that context was not fully supported by the medical evidence.  (A.R. 21.)  Specifically, the ALJ noted that while the "record shows that the claimant has been treated for her neck, low back pain, Graves' disease, and psoriatic arthritis . . . her examinations do not reveal findings that would significantly limit her to the point that she would be unable to perform light level work with postural restrictions."  (*Id*.)  Indeed, a plaintiff's subjective complaints, alone, cannot establish a disability.  *See* 20 C.F.R. § 416.929(a).  An "ALJ has wide discretion to weigh the claimant's subjective complaints, and may discount them where they are unsupported by other relevant objective evidence."  *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (internal citations omitted).  Here, the ALJ discussed findings from a September 12, 2017 orthopedic examination that undermine Plaintiff's subjective complaints.  Relevant to Plaintiff's ability to reach, handle, and feel, Dr. Kothari observed full range of motion in Plaintiff's shoulders, normal upper extremity strength in all major muscle groups, no intrinsic hand weakness, grossly

intact sensation, and intact and symmetric reflexes.  (A.R. 652-53.)  As for Plaintiff's ability to walk, Dr. Kothari indicated a non-antalgic gait and no difficulty heel and toe walking.  (A.R. 653.) Although the ALJ acknowledged Plaintiff's testimony that she uses a cane to walk, the VE testified that cane use would not impact Plaintiff's ability to perform the cited jobs at step five.  (A.R. 51.) With respect to Plaintiff's cervical and lumbar spine, apart from somewhat limited range of motion, and a positive straight leg test, findings were normal.  (A.R. 653-54.)  Dr. Kothari found no tenderness over spinal segments, tender points or trigger points.  (*Id*.)  Lower extremity strength was 4/5 in the right hip abduction and 5/5 in Plaintiff's lower limb.  (*Id*.)  This examination is largely consistent with other examinations by Dr. Kothari over the time period of August 2016 through April 2018, with the exception of tenderness to palpitation along the thoracic spine noted in later examinations.  (A.R. 363-371, 647-668.)

Plaintiff separately cites record evidence from a July 14, 2016 physical therapy evaluation report as support for further limitations for lifting, standing, and walking due to back pain.  (Pl. Br. 15-16.)  Although the July 2016 physical therapy report notes difficulty turning supine, bending and lifting, as well as difficulty standing, (A.R. 673.) the record also shows that upon discharge on October 4, 2016 after therapy, Plaintiff's strength and active range of motion were within functional limits, and Plaintiff reported "feel[ing] better . . . in her low back."  (A.R. 669.) Additionally, the record also shows that Plaintiff underwent lumbar epidural steroid injections after her September 2017 orthopedics appointment, and subsequently, she reported 50 percent improvement in her lumbar spine.  (A.R. 603, 655.)

Concerning Plaintiff's mental health impairments, Plaintiff argues that the ALJ erred in not adequately incorporating Plaintiff's moderate limitations for concentration, pace and persistence into the RFC.  (Pl. Br. 16-18.)  In her decision, the ALJ stated that Plaintiff's "anxiety and

depression are accounted for by the limitation for simple, routine tasks."  (A.R. 22.)  The Court agrees with Defendant that a limitation for simple, routine work is not inconsistent with a finding of moderate limitations in concentration, persistence or pace.  Both parties appear to acknowledge that under the Third Circuit's decision in *Hess*, a "simple tasks" limitation can fairly reflect a claimant's impairments when the claimant has been found to face "moderate" difficulties in "concentration, persistence or pace" where the ALJ provides a "valid explanation."  *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 210, 213 (3d Cir. 2019) ("Without explanation, such a limitation does not warrant a conclusion about whether a claimant's difficulties in 'concentration, persistence, or pace' are so serious that he cannot satisfy the functional requirements of 'simple tasks.'").  In *Hess*, the court found that the ALJ offered a valid explanation when she explained claimant's self-reported activities of daily living, such as caring for personal needs and shopping, as well as notes from examinations showing Plaintiff could perform simple calculations and had intact remote/recent memory.  *Id.*  Likewise, a valid explanation is provided in this case.  In her discussion of the medical evidence, the ALJ found the opinions of DDS psychological consultants that Plaintiff could carry out "simple instructions," despite "moderate limitations in carrying out detailed instructions and maintaining attention and concentration for extended periods" persuasive.  (A.R. 22.)  The ALJ indicated that these opinions are consistent with Plaintiff's treatment records from Catholic Charities, and the consultive examination "which documented some deficits in memory but generally mild findings otherwise."  (*Id.*)  Indeed, as mentioned *supra*, during her consultive examination, Dr. Resinkoff observed that Plaintiff could perform calculations, serial fives, and had largely intact memory and recall.  (A.R. 539-40.)  In sum, I find that substantial evidence in the record supports the physical and mental health limitations the ALJ afforded Plaintiff in her RFC, but no greater limitations.

### B.       Plaintiff's Migraines

Plaintiff further argues that the ALJ failed to consider her migraines or incorporate limitations consistent with this impairment in her RFC.  (Pl. Br. 18-20.)  As discussed *supra*, Plaintiff testified that she suffers from migraines every other day lasting on average one to two hours at a time that are triggered by sound and light.  (A.R. 45.)  The ALJ acknowledged Plaintiff's alleged chronic migraines but did not further discuss Plaintiff's migraines in her decision.  (A.R. 19.)

The Third Circuit has noted:

> [i]n making a residual functional capacity determination, the ALJ must consider all evidence before him. Although the ALJ may weigh the credibility of the evidence, *he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence.* In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.

*Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (internal quotation marks and citations omitted) (emphasis added).  Here, the ALJ's failure to assess evidence of Plaintiff's migraines was error; however, the error was harmless as it would not have affected the outcome. *See Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) (finding remand inappropriate despite lack of consideration of claimant's obesity because consideration would not have changed the outcome); *Kichline v. Saul*, No. 20-2151, 2021 WL 2367620, at *5 (E.D. Pa. June 8, 2021) (explaining that even had the ALJ erred in categorizing plaintiff's migraines as non-severe, this error was harmless as the RFC already included limitations to accommodate any effect on concentration and focus).

It is Plaintiff's burden to demonstrate "how the . . . error to which he points could have made any difference."  *Shinseki v. Sanders*, 556 U.S. 396, 413 (2009).  Plaintiff argues that had

her migraines been properly considered, "it would result in frequent absenteeism, time off-task and limitations consistent with her sensitivity to light and sound, including, but not limited to limitations in exposure to sounds and bright lights." (*See* Plaintiff's Reply Br. "Pl. Reply Br." at 6.)

However, apart from rehashing her testimony on the frequency and duration of her migraines and citing to a single medical report documenting Plaintiff's treatment for migraines, Plaintiff offers no medical support for a different result. (Pl. Br. 20.) Upon an independent review of the medical evidence, I find consideration of Plaintiff's migraines would not have resulted in additional limitations. Importantly, although other medical records from Plaintiff's neurologist support Plaintiff's claim that she was treated for migraines, Dr. Zhang also noted that Plaintiff's migraine headache "has been better after taking topiramate extended release" and "[Plaintiff] tolerated the medication well." (A.R. 474.) Because Plaintiff has cited no medical evidence to corroborate the frequency and duration of her migraines, I find that there is no support for the necessity of additional limitations. *See generally Kanakis v. Comm'r of Soc. Sec*., 649 F. App'x 288, 291 (3d Cir. 2016) (finding substantial evidence for the ALJ's RFC determination where medical evidence showed that claimant's symptoms were reasonably manageable, and claimant responded well to pain medication); *Cola v. Colvin*, No. 14-1452, 2015 WL 2137510, at *10 (W.D. Pa. May 7, 2015) (noting that while there is sufficient evidence to support claimant's allegation that he has headaches, the "record reveals no limitations secondary to them or the resulting pain") (internal quotations omitted). Remand for further consideration is therefore not warranted.

### C.    Third-Party Statements

Plaintiff argues that the ALJ failed to properly consider the third-party statements of Ms. Maria Sanchez and Ms. Valentin-Forte. As stated *supra*, an ALJ is required to "give some

indication of the evidence [she] rejects and [her] reason(s) for discounting such evidence." *Burnett*, 220 F.3d 112.  Plaintiff's claim that "[t]here is no indication in the ALJ's decision as to why the [third-party] statements . . . and observations are disregarded" is simply incorrect.  (Pl. Br. 22.)   In her decision, the ALJ explained that "[t]he opinions of the third parties are not persuasive because they are not consistent with the medical evidence of the record."  (A.R. 22.) Defendant submits that further analysis was not required, because current regulations do not require ALJs to articulate how they considered evidence from non-medical sources.  (*See* Defendant's Br. ("Def. Br.") at 14-15.)  Plaintiff responds that the new regulations do not absolve the ALJ from considering all relevant evidence.  (Pl. Reply Br. 7.)

The new regulations state that "[ALJs] are not required to articulate how [they] considered evidence from nonmedical sources using the requirements in paragraphs (a)-(c) in this section." 20 C.F.R. § 404.1520c(d).  Subsections (a) through (c) detail the new standards for how ALJs are to consider medical opinions and prior administrative medical findings, and articulate such consideration in their decisions.  *Id.* § 416.920(a)-(c).  While the Court agrees that the new regulations do not authorize an ALJ to disregard all relevant evidence from third parties all together, under those regulations, the ALJs need not articulate *how* they considered such evidence with the same type of requirements for medical opinions and prior administrative medical findings. *See Fisher v. Comm'r of Soc. Sec.*, No. 20-1467, 2021 WL 4288313, at *5 (W.D. Pa. Sept. 21, 2021) ("While the new rules relieve ALJs from the burden of articulating their consideration of nonmedical source statements using the same standards that apply to medical opinions and prior administrative medical findings, 20 C.F.R. § 416.920c(d), that does not constitute permission to ignore relevant evidence."); *But see Kyra H. v. Comm'r, Soc. Sec. Admin.*, No. 6:18-01979-AC, 2020 WL 2216912, at *19 n.8 (D. Or. May 7, 2020) (noting that under the new rules ALJs would

20

no longer be required to "provide reasons germane to lay witnesses to reject their testimony"). Contrary to Plaintiff's argument, the ALJ did not ignore the third-party statements from Ms. Maria Sanchez and Ms. Valentin-Forte; rather she provided a reason, *i.e.*, the statements are inconsistent with the medical evidence, for discounting such statements.  Accordingly, I find that the ALJ properly considered, and rejected, third-party statements.

## IV.  <u>CONCLUSION</u>

For the reasons set forth above, the Court finds that the ALJ's decision was supported by substantial evidence in the record. Accordingly, the ALJ's decision is **AFFIRMED**. An appropriate Order shall follow.


Dated: February 15, 2022                                    /s/ Freda L. Wolfson
                                                            Hon. Freda L. Wolfson
                                                            U.S. Chief District Judge